# 24-2674

*To Be Argued By*:
JAMES G. MANDILK

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 24-2674

DUANE BEATY,

*Petitioner-Appellant,*

—v.—

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR THE UNITED STATES OF AMERICA

JAY CLAYTON,
*United States Attorney for the*
*Southern District of New York,*
*Attorney for the United States*
*of America*
26 Federal Plaza, 37th Floor
New York, New York 10278
(212) 637-2200

JAMES G. MANDILK,
NATHAN REHN,
*Assistant United States Attorneys,*
*Of Counsel*

## TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Beaty's Offense Conduct. . . . . . . . . . . . . . . . 2

    B.  Beaty's Guilty Plea and Sentencing . . . . . . 4

    C.  Beaty's Direct Appeal . . . . . . . . . . . . . . . . . . 7

    D.  Beaty's Collateral Challenges . . . . . . . . . . . 8

    E.  The Current Section 2255 Motion . . . . . . . 10

ARGUMENT:

POINT I—The District Court Properly Rejected
    Beaty's Challenge to Count Six . . . . . . . . . . . . 11

    A.  Applicable Law . . . . . . . . . . . . . . . . . . . . . . 11

    B.  Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . 11

POINT II—The District Court Did Not Abuse Its
    Discretion by Applying the Concurrent Sentence
    Doctrine to Beaty's Challenge to Counts Three
    and Four . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    A.  Applicable Law . . . . . . . . . . . . . . . . . . . . . . 14

    B.  Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ii

PAGE

# TABLE OF AUTHORITIES

*Cases*:

*Al-'Owhali v. United States,*
   36 F.4th 461 (2d Cir. 2022) . . . . . . . . . . . . . *passim*

*Johnson v. United States,*
   576 U.S. 591 (2015). . . . . . . . . . . . . . . . . . . . . . . 9

*Johnson v. United States,*
   779 F.3d 125 (2d Cir. 2015) . . . . . . . . . . . . . . . . 11

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A.*
   *de C.V.,*
   412 F.3d 418 (2d Cir. 2005) . . . . . . . . . . . . . . . . 16

*Kassir v. United States,*
   3 F.4th 556 (2d Cir. 2021)  . . . . . . . .   14, 16, 17, 19

*Muyet v. United States,*
   No. 23-333, 2024 WL 2890390
   (2d Cir. June 10, 2024) . . . . . . . . . . . . . . . . . . . . 15

*Thomas v. United States,*
   No. 18-3697, 2022 WL 2446301
   (2d Cir. July 6, 2022) . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Davis,*
   122 F.4th 71 (2d Cir. 2024) . . . . . . . . . . . . . . 12, 19

*United States v. Davis,*
   588 U.S. 445 (2019). . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Halvon,*
   26 F.4th 566 (2d Cir. 2022) . . . . . . . . . . . . . . 15, 17

iii

PAGE

*United States v. Krasniqi,*
　No. 10 Cr. 464, 2022 WL 2663826 (S.D.N.Y. July
　8, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Norman,*
　935 F.3d 232 (4th Cir. 2019) . . . . . . . . . . . . . . . 12

*United States v. Parkes,*
　252 F. App'x 373 (2d Cir. 2007) . . . . . . . . . . . . . 7, 8

*United States v. Tabb,*
　949 F.3d 81 (2d Cir. 2020) . . . . . . . . . . . . . . . . . 12

*United States v. Taylor,*
　596 U.S. 845 (2022). . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Vargas,*
　615 F.2d 952 (2d Cir. 1980) . . . . . . . . . . . . . . . . 17

*Statutes, Rules & Other Authorities:*

18 U.S.C. § 924(c) . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

21 U.S.C. §§ 812 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

21 U.S.C. 801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 24-2674

---

DUANE BEATY,

*Petitioner-Appellant,*

—v.—

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

---

## BRIEF FOR THE UNITED STATES OF AMERICA

---

### Preliminary Statement

Duane Beaty appeals from an order entered on August 16, 2024, in the United States District Court for the Southern District of New York by the Honorable Lewis A. Kaplan, United States District Judge, denying Beaty's latest motion to vacate some of his convictions pursuant to 28 U.S.C. § 2255.

Beaty is serving his sentence.

2

## Statement of Facts

### A. Beaty's Offense Conduct

Beaty's convictions stem from two conspiracies: a narcotics trafficking conspiracy and a conspiracy to rob a drug dealer, during which a victim was killed.

Beaty participated in the narcotics trafficking conspiracy from approximately 1995 to 2001. (PSR ¶¶ 6-8).[1] He conspired to sell marijuana and cocaine, and he sometimes carried a gun while doing so. (Tr. 253). The guns he owned included automatic and semiautomatic weapons. (*Id.*). Beaty did more than just carry these guns: He fired and brandished them on multiple occasions. In 1996, Beaty was shot in a dispute over money. After he left the hospital, Beaty retaliated by using a Tech-9 sub-machine gun to fire shots at a car he believed to be occupied by the person who shot him. One victim was hit by Beaty's gunfire, although it does not appear that any victims were killed. (PSR ¶ 30). On other occasions, Beaty shot at people he believed to be interfering with drug sales in his neighborhood. (*Id.*).

---

[1] "PSR" refers to the Presentence Investigation Report prepared by the United States Probation Office in connection with Beaty's sentencing; "Br." refers to Beaty's brief on appeal; "Dkt." refers to an entry on the District Court's docket for this case; and "Tr." refers to the transcript of co-defendant Otis Parkes's trial, which was filed on the District Court's docket at Dkt. 245-1. Unless otherwise noted, case text quotations omit all internal quotation marks, citations and alterations.

3

Also in 1996, Beaty participated in a kidnapping. Beaty and others believed that the victim had information about the death of Beaty's friend. During the kidnapping, one of Beaty's co-conspirators shot the victim in the head. The victim survived. (PSR ¶ 31).

In 2003, Beaty conspired to rob a drug dealer, together with Steven Young and Otis Parkes. Young approached Beaty and Parkes days in advance and told them about a plan to rob Ruben Medina. Beaty readily agreed. His view, as he later testified at the Parkes trial, was that "it sounds easy, you know, I wouldn't mind doing it." (Tr. 266).

On June 17, 2003, at approximately midnight, Beaty and his two co-conspirators drove to Medina's apartment. (Tr. 271-73; PSR ¶ 11). During the drive, the three men confirmed that each was "packing"—*i.e.*, carrying a gun. (Tr. 272; PSR ¶ 13). They entered Medina's building with guns drawn as they walked up the stairs to Medina's apartment. (Tr. 272; PSR ¶ 13).

Once inside, Beaty and his co-conspirators grabbed a 15-year-old girl by the neck, threw her onto a bed, and put a plastic bag over her head. (Tr. 50, 58-59). They pistol-whipped a 64-year-old man, causing him to bleed from the head, and duct-taped his hands behind his back. (Tr. 179, 182-183; PSR ¶ 14). Beaty personally dragged a man out of bed and then searched for drugs and drug money. (PSR ¶¶ 13, 15). While Beaty was searching for drugs and drug money in a closet, Medina arrived home with his girlfriend, and Young shot him once in the head and twice in the back, causing his death. (Tr. 61, 97-98, 121, 162, 282-284; PSR ¶ 15). Shortly after the shooting, Beaty and his

4

co-conspirators fled the apartment into Parkes's Jeep. (Tr. 284).

Soon thereafter, police found Beaty and one of his co-conspirators standing next to the getaway vehicle, which contained a .40-caliber Smith & Wesson semi-automatic pistol and black leather gloves with blood that matched the 64-year-old man who was pistol-whipped during the robbery. (Tr. 105, 143, 150, 162, 187-188, 216, 229-232, 263, 274, 288, 341-342). Also in the Jeep was the murder victim's cell phone and other property from the apartment. (Tr. 105, 146-148, 216).

### B. Beaty's Guilty Plea and Sentencing

On October 7, 2004, Beaty waived indictment and pleaded guilty to Superseding Information S4 03 Cr. 1364 (LAK) (the "Information"). The Information charged Beaty in six counts.

For his role in the botched robbery attempt in 2003, Beaty pleaded guilty to conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One); attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 (Count Two); possessing and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count Three); and causing the death of a person through use of a firearm during and in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(i)(1) and 2 (Count Four).[2] Count Three and Count Four

_____

[2]  18 U.S.C. § 924(i) has since been recodified as 18 U.S.C. § 924(j).

5

were each predicated on two crimes of violence: Hobbs Act robbery conspiracy and attempted Hobbs Act robbery—that is, Count One and Count Two.

For his role in the drug distribution conspiracy from 1995 to 2001, Beaty pleaded guilty to conspiracy to distribute and possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846 (Count Five); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (Count Six). Count Six was predicated on the narcotics trafficking conspiracy charged in Count Five.

Beaty pleaded guilty pursuant to a cooperation agreement with the Government, which required him, among other things, to truthfully and completely disclose all information with respect to his own activities and the activities of others concerning all matters about which he was asked, and to testify truthfully at trial or any court proceeding. (*See* Plea Agreement, Dkt. 245-2 at 2-3). The Plea Agreement also immunized Beaty for multiple uncharged crimes that he admitted having committed, including, among other things, murders, assaults, and kidnappings. (*Id.* at 3).

Beaty testified as a Government witness at trial against defendant Otis Parkes. Prior to Beaty's sentencing, the Government learned that the defendant had failed to honor the terms of his cooperation agreement because he failed to disclose that he had conspired to tamper with or kill a witness. Accordingly, the Government declined to file a letter pursuant to 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1. The defendant moved for an order compelling the Government to file such a letter, which the District Court denied. As the

6

District Court later explained at sentencing, Beaty violated the agreement by failing to disclose his effort to tamper with one of the Government's witnesses and potentially have that witness killed. (Dkt. 245-3 at 26-29).

On June 14, 2006, the District Court sentenced Beaty to a term of imprisonment of 240 months on Counts One and Two, 120 months on Count Four, and 120 months on Count Five, with the foregoing to run concurrently; life imprisonment on Count Three, to run consecutively to the sentences on Counts One, Two, Four, and Five; and life imprisonment on Count Six, to run consecutively to the sentences on Counts One through Five. (Dkt. 245-3 at 37).

The District Court acknowledged that the Guidelines were not mandatory and stated that it had "considered all of the factors in Section 3553(a)." (Dkt. 245-3, at 37-38). The District Court concluded that the multiple life sentences that it imposed were necessary in light of those factors:

> Despite the fact that this defendant did not set out on the day Rubin Medina died to kill anyone, the high risk that the robbery would result in a killing should have been obvious to any rational human being. Three guys don't go off carrying guns to take down a drug dealer without understanding the likelihood that somebody's going to die. This defendant did that, and notwithstanding the fact that I don't think he said to him, oh, we are

7

going to kill somebody today, he was just beyond reckless.

He has a long criminal record, including a robbery at the age of l5 and a manslaughter conviction at the age of 31, not to mention drug and weapons offenses. I cannot bring myself to say that a sentence lower than what I have imposed would be sufficient under the Sentencing Reform Act, even taking the guidelines out of play.

Given the defendant's history, given what happened here, he needs to be disabled from doing anything like this again. And given the lack of judgment or ability to control himself, I don't see any other way but to put him away. I don't do this lightly or with anything other than almost a sense of despair about it, but it is the fact.

(*Id.* at 38).

## C.  Beaty's Direct Appeal

Beaty filed a direct appeal from his sentence, arguing only that the sentence was substantively unreasonable. *United States v. Parkes*, 252 F. App'x 373, 375 (2d Cir. 2007). This Court affirmed, citing with approval the District Court's finding that "the high risk that the robbery would result in a killing should have been obvious to any rational human being," and noting Beaty's "'long criminal record,' including prior convictions for robbery and manslaughter." *Id.* at 375-76.

8

This Court also acknowledged "the careful attention" the District Court "gave to the sentencing factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence," and upheld the District Court's finding that Beaty "forfeited his opportunity to receive a lesser sentence, whatever that might have been, when he withheld from the government his involvement in a conspiracy to intimidate or kill a crucial witness." *Id.* at 376.

### D.  Beaty's Collateral Challenges

Beaty has, over the years, filed several motions challenging his conviction pursuant to 28 U.S.C. § 2255 and Federal Rule of Civil Procedure 60(b). He has argued that he was compelled to enter his guilty plea, that his guilty plea was insufficiently knowing and voluntary, that the Government withheld information favorable to him, that his sentence was unlawful because he had already served time in state custody on one of the charged counts, that he had received ineffective assistance of counsel from a series of attorneys in the district court and also on appeal, that he was actually innocent, that the Government did not have jurisdiction to prosecute him under the Hobbs Act (and his counsel had been ineffective for not raising that issue), that his conviction on the narcotics conspiracy count was invalid due to the applicable statute of limitations, and that this Court should issue a writ of mandamus because the District Court abused its discretion in denying an earlier motion. The District Court and this Court found no merit to any of these arguments. *See, e.g.,* 11 Civ. 8596 (LAK), Dkt. 1, 4, 7, 8; 03 Cr. 1364 (LAK), Dkt. 161, 163, 168-69, 171-73; 15

9

Civ. 8637 (LAK), Dkt. 1-5, 8; Second Circuit No. 12-2321, Dkt. 1, 3, 46, 59; Second Circuit No. 14-779, Dkt. 1, 25; Second Circuit No. 14-2721, Dkt. 1, 2, 15; Second Circuit No. 15-3536, Dkt. 1, 6, 19.

Of particular relevance, on June 9, 2016, Beaty moved under 28 U.S.C. § 2255 to vacate his conviction on Count Three (use of a firearm in connection with a crime of violence). Second Circuit No. 16-1827, Dkt. 2. He argued that the Count Three conviction lacked a valid predicate offense after *Johnson v. United States*, 576 U.S. 591 (2015). *Id.* at 9. While the case was pending before this Court, the Supreme Court decided *United States v. Davis*, 588 U.S. 445 (2019), and Beaty filed supplemental papers. Second Circuit No. 16-1827, Dkt. 27. The gravamen of Beaty's argument was that conspiracy to commit Hobbs Act robbery was not a crime of violence, so Count Three no longer rested on a valid predicate crime of violence.

On August 26, 2020, this Court granted the defendant's motion for leave to file and transferred the Section 2255 motion back to the District Court. (Dkt. 198). On July 7, 2021, the District Court denied the motion. Judge Kaplan explained that the Count Three conviction remained valid despite *Johnson* and *Davis* because, in addition to pleading guilty to Hobbs Act conspiracy, Beaty also "pled guilty to attempted Hobbs Act robbery," that is, to Count Two, "which remains a valid predicate." (Dkt. 218 at 4). Beaty appealed. (Dkt. 221). Construing the filing as a motion for a certificate of appealability and other relief, this Court denied it, finding that Beaty had not made "a substantial showing of the denial of a constitutional right." (Dkt. 222).

10

### E.   The Current Section 2255 Motion

On September 23, 2022, Beaty filed the current motion in the District Court (the "Motion"), along with a memorandum of law. (Dkt. 223, 224).

The Motion asserted arguments similar to those that the District Court rejected in 2021. Specifically, Beaty again challenged his Count Three conviction, arguing that it did not rest on a predicate crime of violence. Beaty argued, based on developments in the law including *United States v. Taylor*, 596 U.S. 845 (2022), that attempted Hobbs Act robbery is not a crime of violence. The Motion also challenged Count Six, arguing that federal narcotics conspiracy under 21 U.S.C. § 846 is not a drug trafficking offense within the meaning of 18 U.S.C. § 924(c), meaning that the Count Six conviction likewise lacks a valid predicate offense.

Because the Motion was a successive Section 2255 motion, the District Court treated it as a motion for leave to file and transferred it to this Court. (Dkt. 235). On November 14, 2023, this Court granted Beaty's motion for leave to file a successive Section 2255 motion and transferred the Motion back to the District Court. (Dkt. 241).

On August 16, 2024, the District Court denied the Motion. (Dkt. 253). Judge Kaplan first rejected Beaty's challenge to Count Six, reasoning that a narcotics conspiracy is plainly a drug trafficking crime for purposes of Section 924(c). Judge Kaplan then exercised his discretion under the concurrent sentence doctrine, declining to consider the defendant's challenges to Counts Three and Four because, regardless of the outcome of

11

those challenges, the defendant will remain imprisoned for life because of the valid, consecutive life sentence on Count Six.

Beaty moved for a certificate of appealability, which this Court granted on May 15, 2025.

## A R G U M E N T

### POINT I

### The District Court Properly Rejected Beaty's Challenge to Count Six

Beaty moved to vacate Count Six on the ground that the narcotics conspiracy charged in Count Five is not a valid predicate offense for a Section 924(c) conviction. The District Court properly rejected that argument, which is contrary to the plain text of the statute and this Court's precedent.

### A. Applicable Law

The Court of Appeals "review[s] de novo a district court's denial of a 28 U.S.C. § 2255 petition." *Johnson v. United States*, 779 F.3d 125, 127 (2d Cir. 2015).

### B. Discussion

The District Court correctly held that a narcotics trafficking conspiracy in violation of 21 U.S.C. § 846 is a "drug trafficking crime," as that term is used in 18 U.S.C. § 924(c). A "drug trafficking crime" is defined to include "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." 18 U.S.C.

12

§ 924 (c)(2). Count Five, a conspiracy to distribute and possess with intent to distribute marijuana and cocaine, is a felony punishable under the Controlled Substances Act. *See* 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(D), 846. Accordingly, as the District Court correctly held, Count Five is a drug trafficking crime and a valid predicate offense for Count Six. This Court has previously reached the same conclusion. *See, e.g., United States v. Davis*, 122 F.4th 71, 76-77 (2d Cir. 2024) ("Conspiracy to distribute marijuana and possession with intent to distribute marijuana are both felonies punishable under the Controlled Substances Act, so they qualify as drug trafficking crimes under section 924(c).").

On appeal, Beaty fails to engage with the District Court's reasoning. Instead, he reiterates the irrelevant arguments he offered below, focusing on *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019). There, the Fourth Circuit held that a Section 846 narcotics conspiracy is not a "controlled substances offense" for purposes of the Career Offender Guideline. *Id.* at 239. But *Norman* concerned an entirely different issue: the meaning of the phrase "controlled substances offense" as used in the Career Offender Guideline, not the meaning of the phrase "drug trafficking crime" as used in Section 924(c).[3] And, in any event, this Circuit has explicitly rejected *Norman*. *See United States v. Tabb*, 949 F.3d 81, 87-88 (2d Cir. 2020) ("respectfully

---

[3]   Further illustrating the irrelevance of *Norman* to this case, the Career Offender Guideline was not applied to Beaty. (PSR ¶¶ 49-55, 125).

13

disagree[ing]" with *Norman* and reaching the opposite result).

Because Judge Kaplan correctly concluded that a Section 846 conspiracy is a drug trafficking offense, this Court should affirm his denial of the motion to vacate Count Six.[4]

## POINT II

### The District Court Did Not Abuse Its Discretion by Applying the Concurrent Sentence Doctrine to Beaty's Challenge to Counts Three and Four

Because Judge Kaplan correctly rejected Beaty's challenge to Count Six, Beaty will continue to serve a life sentence regardless of the outcome of the balance of the Motion. Accordingly, Judge Kaplan did not abuse his discretion by declining to consider Beaty's challenge to Counts Three and Four.

---------

[4] This Court should also affirm on the independent ground that this argument is procedurally defaulted. Because this is a successive Section 2255 motion and Beaty's argument concerning Count Six has no relation to "newly discovered evidence" or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," they are subject to the bar in 28 U.S.C. § 2255(h). The District Court did not reach this question because it rejected Beaty's argument on the merits, but the Government raised the issue of procedural default below and it offers an independent ground for affirmance.

14

## A. Applicable Law

Under the concurrent sentence doctrine, courts "may decline to consider collateral challenges to a conviction's validity if the petitioner is concurrently serving an equal or longer sentence on another valid count of conviction." *Kassir v. United States,* 3 F.4th 556, 569 (2d Cir. 2021). The doctrine is "a rule of judicial convenience" that "allows courts, in their discretion, to avoid reaching the merits of a claim altogether in the presence of identical concurrent sentences since a ruling in the defendant's favor would not reduce the time he is required to serve or otherwise prejudice him in any way." *Id.* at 561.[5]

---

[5] Despite its name, the concurrent sentence doctrine also "applies to a collateral challenge to a conviction for which the sentence runs consecutively to one or more unchallenged life sentences." *Al-'Owhali v. United States*, 36 F.4th 461, 467 (2d Cir. 2022) (declining to review a defendant's *Davis* claim challenging a Section 924(c) conviction in light of unchallenged life sentences that were affirmed on direct appeal). As this Court has explained, "[w]hen a prisoner challenges a sentence to run consecutively to an unchallenged life sentence, even a complete vacatur of the challenged sentence will not 'reduce the time he is required to serve' in prison," so "[w]hether the challenged sentence runs consecutively or concurrently to the unchallenged life sentence 'is a distinction without a difference.'" *Id.* (citations omitted); *see also, e.g., Thomas v. United States*, No. 18-3697, 2022 WL 2446301, at *1-2 (2d Cir. July 6, 2022) (declining to reach the merits of a *Davis*

15

This Court "review[s] a district court's application of the concurrent-sentence doctrine for abuse of discretion." *Muyet v. United States*, No. 23-333, 2024 WL 2890390, at *1 (2d Cir. June 10, 2024). "A district court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions." *United States v. Halvon*, 26 F.4th 566, 569 (2d Cir. 2022).

## B.  Discussion

The District Court did not abuse its considerable discretion in denying Beaty's motion to vacate Counts Three and Four under the concurrent sentence doctrine. As the District Court correctly noted, Beaty's challenge could have no effect on his period of incarceration because, regardless of the outcome, he will serve a life sentence on Count Six. By declining to

───────────

challenge to a Section 924(c) conviction in light of unchallenged concurrent life sentences); *United States v. Krasniqi*, No. 10 Cr. 464, 2022 WL 2663826, at *1-2 (S.D.N.Y. July 8, 2022) (applying the concurrent sentence doctrine and declining to consider Section 2255 motion seeking vacatur of Section 924(c) conviction based on *Davis*, where the petitioners' "collateral challenge to [their Section 924(c) conviction] will have no effect on the time that they must remain in custody—they will be in prison for life regardless" as a result of life sentences on unchallenged convictions for murder and racketeering).

16

consider Counts Three and Four, the District Court "conserve[d] judicial resources when, regardless of the outcome, the prisoner will remain in jail for the same length of time." *Al-'Owhali v. United States*, 36 F.4th 461, 466 (2d Cir. 2022).

On appeal, Beaty entirely fails to join issue with the District Court's opinion. He acknowledges that Judge Kaplan applied the concurrent sentence doctrine, (Br. 13-14), but offers no reason to believe that doing so was an abuse of discretion. He has thus waived any such argument. *See JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived . . . ."). This Court can and should affirm on that basis alone.

In any event, applying the concurrent sentence doctrine here accords with numerous cases in this Circuit. In *Kassir*, for example, this Court declined to consider the merits of a collateral challenge to a conviction where there was no challenge to other counts of conviction that resulted in life sentences. This Court found that the claim, "even if successful, offers [the defendant] no reasonable prospect of a shorter time in custody. He will remain in prison on dual life sentences for conspiring to kill people." *Kassir*, 3 F.4th at 569. The Court noted that "harmless-error analysis, of which the discretionary concurrent sentence doctrine is a species," applies on collateral review, and "[w]ithout prejudicial error, there is no basis for collateral relief." *Id.* at 564. Because federal habeas statutes such as Section 2255 are remedies for "*severe restraints on individual liberty*," and a Section 2255 motion "must

17

be grounded in an attack on custody," "[r]elief from fines, special assessment fees, restitution, and other noncustodial punishments" are not themselves "the prejudice required to obtain relief." *Id.* at 566 (emphasis in original). Thus, in order to "avoid unnecessary adjudication of issues and unnecessary pronouncements of law" and to "promote public respect for the criminal process by focusing on the underlying fairness of the proceeding rather than on the virtually inevitable presence of immaterial error," courts should generally "reserve their judgment only for issues that, once resolved, have some practical effect." *Id.* at 565; *see also Al-'Owhali*, 36 F.4th at 467-68 (finding that "[v]acatur of [the petitioner's] § 924(c) conviction will have no effect on the time he must serve in prison" and noting that "[o]ther circuits have applied the concurrent sentence doctrine in similar circumstances").

In deciding whether to exercise his discretion to decline review of a claim pursuant to the concurrent sentence doctrine, Judge Kaplan properly considered the five non-exhaustive factors identified in *United States v. Vargas*, 615 F.2d 952, 959-60 (2d Cir. 1980). These "*Vargas* factors" are "the unreviewed conviction's effect on the petitioner's eligibility for parole, the future application of recidivist statutes for a future offense by the petitioner, the petitioner's credibility in future trials, the possibility of pardon, and societal stigma of a conviction." *Kassir*, 3 F.4th at 568; *Al-'Owhali*, 36 F.4th at 468.

Judge Kaplan correctly found that none of the *Vargas* factors supports review of Counts Three and Four because there is "no meaningful possibility" that the

18

unreviewed convictions will subject Beaty to a "substantial risk of adverse collateral consequences." *See Al-'Owhali*, 36 F.4th at 468. The Motion identified only two potential adverse consequences: "parole opportunities" and "prison classification." As the District Court rightly noted, the effect on parole eligibility is irrelevant because the federal system has abolished parole. Nor did Judge Kaplan abuse his discretion in recognizing that "prison classification" is "not the type of grave harm for which Section 2255 review ordinarily is reserved" and that "in any event," it was unlikely that "vacating the convictions on Counts Three and Four would have a material impact on Beaty's classification in light of his life sentence and offense conduct." (Dkt. 253 at 3). Regardless of whether the convictions on Counts Three and Four are vacated, Beaty does not challenge other convictions relating to the very same conduct (*i.e.*, the botched robbery that resulted in Medina's murder), and Beaty admitted the underlying facts on the stand. Beaty's suggestion that vacatur of Counts Three and Four would affect his prison classification is, therefore, nothing but speculation. *Cf. Al-'Owhali*, 36 F.4th at 468 (when analyzing *Vargas* factors, "the court must eliminate from the forward-looking analysis unrealistic speculation because if highly speculative adverse collateral consequences were to bar courts from applying the concurrent sentence doctrine, there would be nothing left to this useful rule").

19

For these reasons, the District Court acted well within its discretion by applying the concurrent sentence doctrine.[6]

_____

[6] This Court should also affirm on the independent ground that Beaty's motion is not cognizable under Section 2255 because it does not challenge his custody. Beaty raises no non-frivolous challenge to Count Six, which resulted in a life sentence, *see United States v. Davis*, 122 F.4th 71, 76-77 (2d Cir. 2024) (finding analogous argument "meritless" and "baseless"), so he does not "claim[ ] the right to be released," 28 U.S.C. § 2255; *see Al-'Owhali*, 36 F.4th at 465 & n.6 ("A § 2255 motion challenges the prisoner's being in custody, and relief may be afforded only when the prisoner claims 'the right to be released.' 28 U.S.C. § 2255(a). '[T]he use of ['custody'] in federal habeas statutes is 'designed to preserve the writ . . . as a remedy for severe restraints on individual liberty.' Challenges to noncustodial punishments do not qualify for such collateral review." (quoting *Kassir*, 3 F.4th at 566; alterations in original)). Because the Motion raises no colorable argument that Beaty should ever be released, it is not cognizable under Section 2255. The District Court did not reach this question because it applied the concurrent sentence doctrine, but the Government raised this argument below and it offers an independent ground for affirmance.

20

## CONCLUSION

**The order of the District Court should be affirmed.**

Dated:    New York, New York
          February 12, 2026

                    Respectfully submitted,

                    JAY CLAYTON,
                    *United States Attorney for the*
                    *Southern District of New York,*
                    *Attorney for Respondent-Appellee.*

JAMES G. MANDILK,
NATHAN REHN,
    *Assistant United States Attorneys,*
            *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 4,477 words in this brief.

JAY CLAYTON,
*United States Attorney for the*
*Southern District of New York*

By:  NATHAN REHN,
*Assistant United States Attorney*